May it please the Court, my name is William Weiner. I represent Petitioner Kesser. My co-counsel is Russell Covey. He represents Petitioner Leahy. We're going to divide our time 15 minutes each. I'm going to try to keep track and counsel will interrupt me if I go over. I'm going to attempt to do my best, at least our attempt, is to answer the questions and argue straight Vatson issues. I have three points to make regarding it and my co-counsel is going to attempt to respond and answer questions and argue concerning the mixed motive analysis. Petitioner contends that the state Vatson's analysis was wrong for three separate reasons. Number one, at step two the framework requires a race neutral reason and that wasn't given. Number two, if you do reach step three, the state concluded that a motivating factor at step three was race based and that itself requires reversal. And number three, if this Court concludes that the state's conclusion at step three was, as a matter of law, appropriate, that no deference is due that conclusion because it was based on an unreasonable determination of the facts before the Court. I start out with number one, the race neutral argument that I'm about to make. I have a question with respect to the role of the findings of fact by the state's Court and how it would affect all three steps, all three parts of your analysis. Okay, and actually I'll just go right to step three then. I think that may answer your question. Of course, I'm quite aware of the fact that deference is due to factual findings made by state Court. I think the Court understands that the DCA in this case at step three made a factual finding. The DCA, if it is a factual finding, concluded the following, that the trial Court could have reasonably based the neutral explanations given by the prosecutor as the predominating reasons. So... That's true. That's right. It wasn't the only and it wasn't the primary and it wasn't the predominant, which is the point I was making and I think you're absolutely right, Your Honor. It said the trial Court could have found that the predominating factors were neutral and I think that's correct. Okay, even if it did make its own finding, let's just look at it. First of all, it made its own finding giving deference to the trial Court under California law and we know the trial Court, of course, didn't recognize the race-based reasons given by the prosecutor. It also said that under California law, the prosecutor's reasons are deemed to be constitutional, are presumed to be constitutional. That was based, that was part of the finding that it made. But perhaps more importantly, it... Perhaps you're not focusing on the part of the language. The Court of Appeals said for this defendant, that is, the race-based aspect, was this the only or primary reason they would have seen cause for concern? Yes. It wasn't. It went on. That's right. And let me just get right to the cut and get to your question and that is by stating that, obviously what it's saying, what the Court is saying, it wasn't the only reason, it was a reason. Race-based factor clearly was a reason, but it was not the primary reason, I think, in your words, or in my words, the predominant reason. Well, I think Hernandez answers that question. In Hernandez, which was a Step 2 case, Hernandez indicated that if race, if solely race, is at least part of the reason there's a constitutional violation. And that's why I said there was an admission by the DCA, whether it's a legal conclusion, which I believe it is, or whether it's a finding of fact, the DCA clearly said, as I agree with the Court, that it was a reason for the strike. I mean, let's face it, the trial court says to the prosecutor, what are your reasons for striking these people? And the prosecutor said, my reasons are they distrust the criminal justice system. And then he goes on later and gives the trial molestation speech. He didn't come out of the blue with that. He's literally responding to the trial court's request. Give me your reasons for striking these people. And so I agree with you on it. Now, I disagree that it wasn't the primary reason, but that's besides the point. The Court of Appeals, and I agree with you, did clearly find that that was a reason. And if it was a reason, that's it. Well, let me just keep on the reason, because I think it's important that Your Honor recognize that. Arlington Heights is what Hernandez is based upon, is what Batson is based upon. Arlington Heights, Mount Healthy, and also the Feeney case, all these are equal protection cases. And in each one of those equal protection cases, the Court made it quite clear that if race is a part of the reason, just one single part of the reason, and nothing more, an equal protection violation has occurred. And that's what has happened here based on the finding. If there's an affirmative defense, as I would have done it anyway, that wasn't done in this case. And of course, I'll leave that to my counsel. If the Court would prefer, I'll respond to it. But my counsel would be able to argue that. I can understand the difference between your argument and your counsel's argument. It's your argument that there should be no defense. I'm just going to say, if one of the reasons, or a substantial reason, or a motivating reason, however we couched it, is found that the Batson defense fails at Stage 2, or the justification fails at Stage 2, and that's it? That's correct, Your Honor. That is one of my contentions, that it fails at Step 2. And then that's it, there's no defense? There's no defense at that point. The reason that you have a Step 3 is because there's a pretext. The normal procedure would be the prosecutor comes up and comes up with mutual reasons. Then there's a pretext argument that's made basically at Step 3. There's no need to do that. The question to the prosecutor is, what are your reasons? And he gives his reasons. We now know that a reason, and all you need is a reason, a motivating factor, and here it's clearly an enormous, overarching philosophy concerning Native Americans and the distrust they have of the criminal justice system as a reason. There's no need to go any further. He has said, my reason, at least in part, for striking that jury is because she's Native American and she distrusts the criminal justice system. But then you do need, though, to explain, and I think there may be explanations, but you need to explain why we would, you seemed earlier to be relying on Arlington Heights and Land Healthy and so on, but they do have an affirmative defense available and you seem to be saying that none is available here, so the question is why. I will respond to that then as well. In my view, Arlington Heights is talking about a civil case. It's talking about a case where there's liability. It's talking about a case where there's interrogatories, where there's depositions, where there's trial testimony. It's talking about a situation where the finder of fact, whether it's a judge or a jury, has an enormous panoply of information before it and the plaintiff and the defendant can develop that case. We know from the Batson inquiry that it's a prompt hearing. The jury is waiting. Witnesses are usually waiting. We want to do things as fast as possible. And we also know the dictates of Batson. It's most compelling in the jury selection process. We're not talking about a civil liability. What the court says about Batson is race neutrality, the 14th Amendment is the most compelling place for that, is in the jury selection process. And it talks about there's absolutely no place for race whatsoever as a criteria. And if it is a criteria, even one thing is given. The minimal standard that we can expect from a prosecutor, it's so easy to get over the second hump, is to acquire race neutrality. That's what Batson says. To say otherwise is to make an exception to the force and logic of the Batson principle. And so I believe it shouldn't apply. We don't have a Supreme Court case applying Batson in a mixed-motive context. We don't have the Supreme Court applying Batson in a mixed-motive analysis. I agree with your Honor. We don't. Except for yesterday. I'm sorry, Your Honor. I'm trying to think it through. Yes. No, no. It is true. Your Honor. Your Honor. Let me speak on that point. Now, given the deferential standard of view that we are required to apply in Ed Part, under Ed Part, why isn't incumbent violence even required for us to accept the state court's analysis? Even though, as you, I think, Mr. President, you argue that the Supreme Court case applies in the case of violence of human rights and many other fellow mixed-motive cases. But we don't have a Supreme Court case applying Batson. And as you point out, it is different. In the context of those different civil cases, why don't we just say, well, the state courts didn't do what we would have done, probably, didn't do what other sections have done, and we didn't do what the Supreme Court did in other contexts. But there's no Supreme Court case directly on point, and therefore, we defer. I think I understand Your Honor's question, and I can answer it in two ways. The first answer that I have for Your Honor is that the force and logic of the Supreme Court cases, all of them, clearly indicate that the purpose of the 14th Amendment was race neutrality and to eradicate... The second answer is that's an unreasonable application of the Supreme Court case. That's correct, Your Honor. So that's the first reason one might... It's unreasonable for a state court to adopt a different analysis than the Supreme Court has applied in every other mixed-motive case. That's a good answer. What's your other answer? You said you have a second answer. I mean, unless it's a good enough answer. It's a good answer, I want to understand. The second reason is that, actually, the lower court not only didn't follow Batson, it didn't follow the mixed-motive analysis itself. It just didn't apply it. Nobody applied it. The mixed-motive analysis, as I'm sure Your Honors are aware of, requires basically at step two the switching of the burden of persuasion. Now, not only does the prosecutor have to come up with race-neutral reasons, which here he clearly didn't, as Judge Callan pointed out, but once he doesn't come up with a race-neutral reason, then the prosecutor has to come forward and say, well, I might have said that, but actually that's not really a reason. All these other reasons are the real reasons that I would have done it anyway. That wasn't done here. The trial court, of course, didn't even hear it, didn't understand it, didn't recognize it, and the DCA itself never mentioned the full thing, never talked about the child molestation speech that was given, and never put the burden on the prosecutor, as the judge forcefully pointed out. Let me get you back to the earlier question that you answered. The way I understand 2254D, the state's decision for us to release it and do something about it with habeas has to be clearly contrary to a holding of the Supreme Court, and I wonder why it doesn't follow from your unavoidable concession that the Supreme Court has not decided a mixed motive absent case, that we just do not have authority to issue, to direct issuance of a writ. I'll answer that question. First of all, the Supreme Court has decided it. It has said it requires race neutrality, so in my view, the Supreme Court has decided this issue. Race neutrality is required at step two. If it's not given, that's the end of the issue. That's my answer to that, but I'll go on. The second reason is that if this, if the Supreme Court came out with a ruling and a principle and an enunciation, and the state court made an exception to that, the state court would always say, APPA says, you have to defer to this. This is an exception. The Supreme Court didn't rule on this exception. It didn't rule on this exception. It didn't rule on this exception. The whole idea, of course, is the force and logic of the Supreme Court's enunciations. The Supreme Court never departed from these. In all of its cases, even most recently in Miller L, it said the same thing as strongly as possible. Just one factor is sufficient. One factor is sufficient, and we require race neutrality. It's never come off of that. If you would allow that right now, you'd let the state, in every case when there's a broad principle like this being stated repeatedly, not just once, in every single case by the state, the state could simply say, well, they never decided this point. They never decided this point. That's true. It's never come before the court. But it has been decided. I'll force you to worry what the Supreme Court said. But the second, third, fourth, eleventh, and eight circuits got it wrong. Could you state that? Yeah. The second, third, fourth, eighth, and eleventh circuits have got it wrong. I understand what Your Honor is saying, and of course my counsel will handle that. In my own humble view, yes, I think they do have it wrong. But even if they have it right, it was misapplied here. It wasn't applied here. There was no shifting of any burden. The trial court didn't shift the burden. The DCA didn't shift the burden. And the finding, as I point out to particularly Your Honor, is just what you said, a finding that race was a factor. Not that race didn't play a role, but a finding that race was a factor. It wasn't the primary factor, which is exactly what you'd find if you had shifted the burden. It's the same thing. I think the court is quite clear, the DCA is quite clear that it was a factor, and the Supreme Court has made it quite clear if it is a factor, that's the end of it. Even if you apply the mixed mode of analysis, if that is a factor which caused the prosecutor to excuse this juror, then an equal protection violation has occurred. Also, it isn't at all clear to me that the Court of Appeals made a finding. It said, was this the only reason given by the prosecutor? And they said it gave the prosecutor to give more reasons. But it never made a judgment about those reasons. Ultimately, what one is doing at Stage 3 is making a pretext analysis. Was that ever done here ad initio by the State Court of Appeals? No, you're absolutely right. It never recognized that all Native Americans were excluded, that all minorities were excluded. It didn't perform a comparative juror analysis, which was performed by the government. But even verbally, despite how complicated it was. No, it did not. It did not whatsoever. It just looked at what the trial court said and said, well, there was four reasons and there was this reason. There was overarching philosophy and there were these reasons as well. There's four versus one, so the neutral reasons predominate. Recognizing that a reason was still the fact that Native Americans were not fit to be jurors. But never really deciding whether the reasons given were the actual reasons. That's really what ultimately is going on in Stage 3. That's correct, Your Honor. That was not done. That was not performed as well. If the Court has further questions, my time. I don't want to take my counsel's time here. Thank you very much, Your Honors. I appreciate your time and patience. Thank you, Your Honors. I'm going to try to reserve five minutes for rebuttal. And in the remaining ten minutes that I have, I'd like to establish the following three points. First, that even if the state court may apply a mixed motive as standard to evaluate a Batson challenge, it still must apply clearly established Supreme Court law. Here, the state courts never shifted the burden of proof to the prosecutor as required by the Supreme Court's mixed motive cases, including the Arlington Heights case and the Price Waterhouse case. Well, tell me why it makes a difference here, given what it did say. Your Honor, I think it makes an enormous difference. Justice O'Connor rightly described the effect of a burden shift as strong medicine. And in this particular case, there was an enormous amount of evidence in the record that would indicate that race was a motivating factor in the exercise of the prosecutor's strikes. None of that evidence was considered by either of the state courts below. And the prosecutor had the burden to show that the race neutral reasons that he did articulate would in and of themselves have been sufficient to cause him to exercise the strikes. And that showing simply has not been made, nor has it been required. And under this Court's Caliendo case, the failure of a state court to apply the proper burden shifting standard is wrong as a matter of law, and its factual findings are not entitled to deference when it fails to apply the proper burden shifting standard. Can you point out any jury peremptory case where the burden shifting that you say is settled doctrine is common? The burden shifting has been applied in numerous Supreme Court cases. Arlington Heights, Price Waterhouse, Hunter v. Underwood. Was that a peremptory case? That was not, Your Honor, but several. Please pay attention to the question I asked. Is there one jury selection case in which the burden shifting, which you are laying out as the settled rule, was applied? Yes, Your Honor. Numerous circuit court cases have so held. Was there one Supreme Court case? The Supreme Court case has never had an opportunity to consider the application of mixed motive to the Batson situation, but that does not mean that it is, therefore, permissible. Our argument, to be clear, Your Honors, is that How do you apply Price Waterhouse in your context? How do you analyze what Price Waterhouse is telling us in this case at all? Price Waterhouse establishes and speaks to the causation question, I think, most directly, Your Honor, and most helpfully. The court of appeal in this case did not find that a race-neutral reason was not the but-for cause of the strikes. To the extent that it made any factual findings, it found that it was not the predominant or primary reason. But that finding in and of itself does not address the relevant question.  And that a predominant reason can be race-neutral, but yet the but-for cause of a strike can be race-based, I think is clear. It's like the proverbial camel, Your Honor. You could load up the back of a camel with 500 pounds of race-neutral reasons, but if the race-biased straw breaks the camel's back, the race-biased straw is the legal cause or illegal cause of the camel's injury. Do you see... My question, I guess, to Weiner, is what role does the finding of fact in the California court play, which was, of course, confirmed within the California penal system, with respect to this precise point? Okay. The California court made no findings under applying the proper burden-shifting standard as the mixed motive analysis requires. The findings of fact that the California court did make were merely that, at best, that the race-based reason was not primary. But that does not preclude a finding that the race reason was the but-for or the tipping reason that caused the strike. Yes, Your Honor. The trial court, I gather that you're assuming because the state court of appeals essentially assumed that the state trial court's findings are not due deference because he erred at stage one of facts and that's sort of off the table. Yes, Your Honor. Isn't our analysis different, though, under habeas and AEDPA than it would be under a direct appeal? I'm hearing you argue how we would approach it under a direct appeal, but we still have that pesky AEDPA to deal with. Yes, we do, Your Honor. And I would point to the Caliendo case as a template for how the AEDPA analysis applies in a case where the state courts fail to apply the proper burden-shifting standard, which is what it was required to do if we were to turn to mixed motive analysis, as the state urges. When the courts fail to analyze the case under the proper standard, its factual determinations are not entitled to deference and this court should make a de novo review of the evidence and the record. And I think the evidence in this case is overwhelming that the state has not carried and cannot carry his burden to show that race didn't matter at all. Counsel, the presupposition there is that race has to not matter at all, even if it is a subordinate rather than a primary or predominant factor. Yes, Your Honor. It appears to me you don't have a Supreme Court case that says that in the context of jury selection. I think that there are some cases like the Alexander v. Louisiana case, which was a question that went to the composition of the veneer and not the petty jury. You've got emanations and numbers, but you don't have the case yet. Yes, Your Honor, but if I can clarify, our argument is that the trial court, when confronted with a mixed motive... Let me get to the trial court now. You've argued about whether the prosecutor was put to a burden. I look at the transcript of page 3377, BR 84, and it looks like the judge says, well, let's talk about the four that you corrected that are the defense challenges, and he puts the prosecutor to the test. And then the prosecutor just reads his notes. Some of it's irrelevant.  He just reads his notes and gives all of the things in his notes. Some of the things in his notes are erased, and you can't really tell whether it's an identifying factor or a reason for the challenge. And then at the end, the judge gives his findings. And as I read the appellate court decision, there's some things it doesn't talk about because there's really no context. Context, the record is clear. And the judge says, Mr. Wendells, which is the toughest one, there's sufficient justification because in his understanding of what the prosecutor did, it was that she worked for the tribe, not because she was one of the tribe. Just like in a plaintiff's personal injury case, a plaintiff's lawyer prevents people who work for the insurance industry. Yes, Your Honor, and that understanding, that factual finding was found to be erroneous both by the court of appeal and by the district court, which confirmed that the judge simply misunderstood what the lawyer was saying. Moreover, to the extent that the trial court was asking the prosecutor to carry a burden, it was merely his burden of production at step two of the Batson inquiry to come forward with a race-neutral explanation for his strikes. Where is it that the finding was found to be erroneous? In the court of appeals, the court of appeals stated that had the... Were this the only or primary reason that we would have cause for concern? Yes, Your Honor. That's not a determination that the finding in fact is erroneous? That was... Does that suggest you rely on the proposition that they made a finding that it was erroneous? Yes, Your Honor, and to the extent that that's not a finding, in fact, I think that the court of appeal would be rebutted by clear and convincing evidence. And the district court concluded that the conclusion that the trial court had not found one of the reasons to be race-based was rebutted by the transcript of the proceeding. So the step two burden is merely one of production to come forward with a race-neutral explanation. That's all the prosecutor was asked to do in this case. The... And I think it should be... It's important to clarify that Cook Counsel's argument is that Batson says that in order to get to step three, the prosecutor has to come forward with a race-neutral explanation. That was not done in this case, and so we're alleging that under well-established Batson principles, it was wrong to go to step three. There was an unconsciousness of importance, emotionality about the system, dysfunctional family, unstable. You have a lot of race-neutral reasons. There were a whole lot of race-neutral reasons, but there was also an admission of a racially discriminatory purpose, and there was no showing of causation as is required under the mixed motive rubric, if it applies here. Your Honors, if I could reserve the remainder of my time for rebuttal. Thank you. Good morning, may it please the Court. I'd like to start off by talking about the comparative juror analysis issue, if the Court would prefer that I start with that. Our position has always been that in California, as well as in Berks v. Board, the Ninth Circuit agrees with the California Supreme Court that on review for the first time on a cold record, you cannot conduct an adequate comparative juror analysis. You don't have a record, you don't have any statement of reasons from the prosecutor as to his strategies in allowing certain jurors to sit, and other jurors to be excused. Neither of the three defense attorneys here raised that issue at trial. In contrast to Miller L., where you had a Batson remand hearing two years after the trial, as well as a Swain hearing during the trial, where the prosecutor was cross-examined and put on evidence, and he himself brought up the question of the reasons he allowed several other, I believe he identified two  ... ... ... ... ... ... ... ... ... ... ... ... ... ... If we were to for example have a remand to the state court to have a hearing, at that point, could a comparative analysis be done? I believe it could. I'm not aware of a case that combined the two in a reman situation like that. I looked around for a few. I didn't find anything where both of those issues were resolved on a remand like that, but I don't see any reason why it couldn't be done because obviously in this situation the prosecution has ... ... ... ... ... ... ... This issue wasn't raised at trial. If there is going to be a remand for a mixed motive question to be resolved with testimony with findings by the state court judge and then deference to those findings by the district court as was done or as was recommended in the cases that I cited to the court I don't see any reason why the question of comparative juror analysis couldn't be resolved. Well, I quoted the actual statement, I find sufficient justification.
judges: Schroeder, Kozinski, O'scannlain, Rymer, Kleinfeld, Wardlaw, Paez, Berson, Bybee, Callahan, Bea